## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

Estate of Irwin S. Kalman, by )
John Kachmarsky, Esquire, Special ) Civil Action No.: 2:04-2442-12
Administrator of the Estate of Irwin S. )
Kalman )
)
Plaintiff, )
vs. ) ORDER
)
United States of America )
)
Defendant. )
_____ )

## FINDINGS OF FACTS AND CONCLUSIONS OF LAW

This matter is before the Court on the government's Rule 12(b)(1) motion to dismiss for

the lack of subject matter jurisdiction. The dispute arises out of the Estate of Irwin S. Kalman's

(plaintiff) claim for a refund of $55,895.55, which represents a tax overpayment made to the

United States (defendant) on June 5, 2000. The defendant claims that the plaintiff untimely filed

its claim for a refund, and as a result, the Court does not have subject matter jurisdiction to hear

an action seeking recovery of the refund.

### Procedural History

The plaintiff commenced this action on July 22, 2004. On September 27, 2004, the

defendant filed its answer, and on November 24, 2004, the defendant filed a motion to dismiss

the claim under Rule 12(b)(1) of the Federal Rules of Civil Procedure. On January 11, 2005, the

plaintiff responded, and on January 24, 2005, the defendant replied to the plaintiff's response.

On March 3, 2005, the Court heard the motion to dismiss and directed the parties to conduct

discovery regarding the issue of when the plaintiff mailed the claim for a refund.



On July 18, 2005, the government filed a renewed motion to dismiss pursuant to Rule 12(b)(1) and included evidence outside of the pleadings. On July 29, 2005, the plaintiff filed a memorandum opposing the government's motion, and on August 10, 2005, the government replied to the opposition. The Court heard the motion to dismiss on August 29, 2005. At this hearing, the Court recessed to allow the plaintiffs to present additional evidence proving when the tax return was mailed.

On February 3, 2006, the Court conducted an evidentiary hearing to determine if it had jurisdiction to hear the plaintiffs claim. After hearing testimony, gauging the credibility of the witness, and reviewing the exhibits, the evidence presented, and the briefs submitted by the parties, the Court, pursuant to Rule 52 of the Federal Rules of Civil Procedure, makes the following Findings of Fact and Conclusions of Law:

### Findings of Facts

1. On March 5, 1999, Irwin S. Kalman ("Kalman") died.

2. On Monday, December 6, 1999, nine months after Kalman's death, the plaintiff mailed a request for a six-month extension to file its United States estate tax return. The plaintiff included a check for $114,000.00, which represented its estimate of the taxes the estate owed.

3. On June 5, 2000, the plaintiff mailed a Form 706 estate tax return to the Internal Revenue Service (IRS) by certified mail. The IRS received the return on June 7, 2000.

4. Subsequent to the filing of the original return, Mr. Kalman's surviving spouse received her elective share of the estate in the amount of $55,895.55. The plaintiff seeks a refund in this amount plus interest.

5. On June 4, 2003, John Kachmarsky and Frederick Joseph Bradshaw, IV, prepared two



sets of federal and state amended tax returns.  One set was to be sent to the South Carolina

Department of Revenue and the other to the IRS.

**6.** The set sent to the South Carolina Department of Revenue included the identical

federal amended tax return sent to the IRS.

**7.** The envelopes carrying the tax returns were postmarked at John Kachmarsky's office

using a private postage meter.  The date function on the postage meter had been switched off.[1]

As a result, the envelopes carrying the returns did not have postmark dates on them.

**8.** On Thursday, June 5, 2003, John Kachmarsky placed two envelopes carrying the

amended tax returns in a postal box in front of his office.  One envelope was addressed to the

South Carolina Department of Revenue and the other addressed to the IRS in Cincinnati, Ohio.

**9.** The South Carolina Department of Revenue received one set of the returns on Friday,

June 6, 2003.  The envelope carrying the returns mailed to the South Carolina Department of

Revenue was postmarked using a private postage meter.  No date appeared on the postmark.

**10.** The IRS does not receive mail on Saturday or Sunday.

**11.** The estimated time a first class piece of mail takes to arrive from Charleston to

Cincinnati is two days.

**12.** The IRS received the plaintiff's amended estate tax return on June 9, 2003.

**13.** Based on all of the circumstances, including John Kachmarsky's testimony that he

mailed the return on June 5, 2003, and the South Carolina Department of Revenue's receipt of

the identical federal tax return on June 6, 2003, the Court finds that John Kachmarsky placed the

---

[1] The record reveals no explanation of why the date function was switched off.  The plaintiff speculates that the date function was left off when a return envelope was metered.



amended tax return in the mail box in front of his office on June 5, 2003.

14. The IRS disallowed the plaintiff's refund claim by a letter dated August 8, 2003.

15. The United States Postal Service does not postmark privately metered mail. Persons

using private postage meters are responsible for dating the postmarks created by the private

postage meters.

16. The plaintiff only provides evidence of mailing and not of a postmark.

17. The government did not contribute to the return's lack of a postmark date or late

receipt.

## Conclusions of law

A. The plaintiff claims it has erroneously paid the United States a federal estate tax, and

the plaintiff seeks to recover the tax from the United States. As a result, the plaintiff alleges the

Court has subject matter jurisdiction under 28 U.S.C. § 1346(a)(1).

B. "The United States consents to be sued for tax refunds only when the refund is filed in

accordance with the Internal Revenue Code." Hull v. United States, 146 F.3d 235, 238 (4th Cir.

1998). A failure to timely file a claim for a tax refund is a jurisdictional defect which bars a

taxpayer from bringing suit to recover the tax. 26 U.S.C. §§ 6511(a) and 7422(a); see United

States v. Dalm, 494 U.S. 596, 601-602 (1990).

C. A taxpayer must file a claim for a refund of an estate tax overpayment within three

years from the time the estate tax return was filed. 26 U.S.C. § 6511(a).

D. The deadline to file a claim for a refund runs from the time the plaintiff filed the

return, here June 5, 2000. See 26 U.S.C. § 6513(a); and United States v. Habig, 390 U.S. 222,

225-227 (1968). The claim, therefore, was due on Thursday, June 5, 2003. The plaintiff does



Page 4 of 7

not dispute this conclusion.

E.  Unless an applicable statute or regulation provides otherwise, a document is "filed"
when the IRS receives the document.  See Hull v. United States, 146 F.3d 235, 239 (4th Cir.
1998).  The IRS received the plaintiff's claim for a refund on Monday, June 9, 2003.

F.  Under 26 U.S.C. § 7502(a)(1), when a claim is received after a due date, the date of a
United States Postal Service postmark found on the envelope carrying a document required to be
filed is deemed the date of delivery.  Delivery in this context means filing.  Hull, 146 F.3d at 239.

G.  Prior to the enactment of section 7502, courts applied a presumption of timely
delivery in due course of the mails.  Arkansas Motor Coaches v. C.I.R., 198 F.2d 189, 191 (8th
Cir. 1952); see also Wells Marine, Inc. v. Renegotiation Board, 54 T.C. 1189, 1192 (1970).  The
plaintiff in this case, however, mailed the return on the morning of June 5, 2003, the final day
before the statute of limitations expired.  The return could not have been received by the IRS on
or before June 5, 2003.  As a result, the common law presumption of timely delivery does not
help the plaintiff.

H.  Section 7502 applies in the case of postmarks not made by the United States Postal
Service, to the extent allowed by the regulations promulgated under the authority of section 7502.
26 U.S.C. § 7502(b).  The regulations afford a taxpayer who does not have a United States Postal
Service postmark date of the timely mailed exception provided by section 7502.  26 C.F.R. §
301.7502-1(c)(iii)(B) (2005).

I.  This regulation requires that the private postmark bear a legible date on or before the
last day of the period prescribed for filing a claim.  26 CFR § 301.7502-1(c)(iii)(B)(i).  The
plaintiff's claim for a refund does not have a postmark date on it.  The plaintiff's claim for a



Page 5 of 7

refund, consequently, does not comply with section 7502 or Treasury regulation §

301.7502(c)(iii)(B).

**J.**  A split of authority exists between the Circuits on whether evidence besides an

envelope with a timely postmark is admissible to demonstrate compliance with section 7502.

The Second and Sixth Circuits hold that actual delivery of an envelope with the postmark

constitutes the only satisfactory form of proof and no other extrinsic evidence of mailing can be

considered.  Spencer Medical Associates v.C.I.R., 155 F.3d 268, 271 (4th Cir. 1998)(citing

Carroll v. Commisioner, 71 F.3d 1228, 1232-33 (6th Cir. 1995) and Washton v. United States, 13

F.3d 49, 50 (2d Cir. 1993)).  The Eighth and Ninth Circuits allow extrinsic evidence to prove a

timely postmark.  Spencer Medical Associates, 71 F.3d at 271-72 (citing Anderson v. United

States, 966 F.2d 487, 489-491 (9th Cir. 1992)(testimony from taxpayer and friend of taxpayer

that return was mailed and postmarked before deadline sufficient to prove return, which was

never received by the IRS, was timely mailed) and Estate of Wood v. Commissioner, 909 F.2d

1155, 1159-61 (8th Cir. 1990)(although return never received by the IRS, testimony by attorney

and postal clerk that return was postmarked and mailed before deadline is sufficient to prove

return was timely mailed)).

**K.**  In Spencer Medical Associates, the Fourth Circuit Court of Appeals did not expressly

adopt either rule listed above but appeared to support the more lenient rule applied by the Eighth

and Ninth Circuits allowing proof of a timely postmark.  Spencer Medical Associates, 155 F.3d

at 271-272.

**L.**  Alone, proof of timely mailing is not sufficient to demonstrate compliance with

section 7502.  Section 7502 provides that the date of a postmark serves as the date of delivery.



"In enacting section 7502, Congress intended to eliminate the random distribution of hardships occasioned by variations in postal performance." Curry v. C.I.R., 571 F.2d 1306, 1308 (4th Cir. 1978). The statute deals with the problem of late mail delivery. Id. Section 7502 should not be construed to allow the government to frustrate a taxpayer's access to court. Id. Cases allowing a taxpayer to prove compliance with section 7502 through proof of timely mailing have done so to prevent the government's loss of a return or failure to postmark an envelope to deny a taxpayer's access to court. Sylvan v. C.I.R., 65 T.C. 548 (1975); Skolski v. C.I.R., 351 F.2d 485 (3rd Cir. 1965); Curry v. C.I.R., 571 F.2d 1306 (4th Cir. 1978).

The United States Postal Service does not postmark privately metered mail, and the fault for the lack of a postmark date lies with the plaintiff. The policy reasons present in the cases allowing proof of timely mailing to demonstrate compliance with section 7502 are not present in this action. The Court holds that the plaintiff's proof of mailing is not sufficient to demonstrate compliance with section 7502. The claim for a refund, consequently, was filed on June 9, 2003, when the IRS received the claim.

**M.** Under sections 6511 and 7422, the Court lacks subject matter jurisdiction over this suit and must dismiss the case under Rule 12(b)(1) of the Federal Rules of Civil Procedure. See Dalm, 494 U.S. at 602. This action is hereby dismissed.

**AND IT IS SO ORDERED.**

February 16, 2006                        C. WESTON HOUCK
Charleston, South Carolina              **UNITED STATES DISTRICT JUDGE**